IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| **Dale Lee Pughsley,** )  | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | 1:20cv102 (AJT/TCB) |
| ) | |
| **A. David Robinson, et al.,** ) | |
|     **Defendants.** ) | |

MEMORANDUM OPINION

In this civil-rights suit brought under 42 U.S.C. § 1983, Dale Pughsley claims that his rights under the First Amendment were violated while in the custody of the Virginia Department of Corrections ("VDOC"), and now moves for summary judgment in his favor. [Dkt. No. 30]. The VDOC defendants, A. David Robinson, Jamilla Burney-Devins,[1] Gregory Holloway, Tracy Ray, Beth Cabell, and Lieutenant M. D. Carpenter, oppose Pughsley's motion and cross move for summary judgment. [Dkt. Nos. 34, 37]. Pughsley, who is proceeding pro se, has received the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 36], and he opposes defendants' motion [Dkt. No. 38].

**I. Background**

In the verified complaint Pughsley alleges that he was transferred from Sussex II State Prison ("Sussex II") to Sussex I State Prison ("Sussex I") on April 24, 2018, on an emergency basis after a petition with fifty-five inmate signatures was found with his property. [Compl. ¶¶ 34, 39, 44]. The petition was created by a group of inmates, including Pughsley, who organized the Sussex II Human Rights Committee ("HRC") as a "petition drive to the citizens of

---

[1] In their memorandum in support of summary judgment, defendants spell this defendant's name as "Burney-Devins" and "Burney-Divens." For the sake of consistency, the Court will refer to this defendant as Burney-Devins, how the name is spelled first in the brief.

Virginia requesting assistance in obtaining justice at Sussex II" because of poor conditions of confinement. [Id. ¶¶ 17, 26, 28; Dkt. No. 35, Def. Statement of Undisputed Facts ¶¶ 12–14]. Once fifty-five signatures were gathered, Pughsley was told by another HRC member to mail the petition to the Virginia Defender,[2] to the attention of Phil Wilayto. [Compl. ¶ 34].

Pughsley asserts that when he arrived at Sussex I, he was placed in segregation without having an institutional classification hearing. [Id. ¶ 40]. (He had been housed in general population at Sussex II. [Id. ¶ 39.]). The next week, on May 1, 2018, Lieutenant Carpenter charged him with Offense Code 128 for participating in, or encouraging others to participate in, a group disturbance. [Id. ¶ 46; Carpenter Aff. ¶ 4]. The charge was levied because Sussex II's intelligence department "received information that an offender petition was circulating through the institution demanding resolve for certain offender grievances," resulting in "a targeted cell search of offender Pughsley's cell," where the petition was found. [Carpenter Aff. ¶ 4]. Carpenter "was able to immediately identify the handwriting of offender Pughsley as the author of the petition." [Id.]. After a disciplinary hearing on May 7, 2018, Pughsley was found guilty of the Offense Code 128 offense and disciplined with 30 days' segregation. [Id. Enclosure A]. The same day, an institutional classification hearing was held, after which Pughsley's security level was raised from level 3 to level 5 and his transfer to a supermax facility was approved. [Compl. ¶ 52; Def. Statement of Undisputed Facts ¶ 21]. Warden Cabell, who replaced Tracy Ray as warden on May 23, 2018, upheld the conviction for the Offense Code 128 conviction. [Compl. ¶¶ 59, 67; Def. Statement of Undisputed Facts ¶¶ 22–23]. The conviction was later overturned by

---

[2] The Virginia Defender is a quarterly newspaper published the advocacy group Virginia Defenders for Freedom, Justice & Equality. See https://defendersfje.blogspot.com and https://defendersfje.blogspot.com/p/virginia-defender.html (last visited Aug. 9, 2021).

Holloway, the Regional Administrator for the Eastern Region of the VDOC, on the ground that the disciplinary hearing did not comport with due process. [Stapleton Aff. Enclosure A].

Pughsley further attests that, meanwhile, he wrote to VDOC Operations Manager Marie Vargo on May 18, 2018, "seeking resolution" of the events outlined above and sent a copy to Robinson, the VDOC Chief of Corrections Operations. [Compl. ¶ 56]. Pughsley adds that on May 22, 2018, Wilayto and Lynetta Thompson, the former head of the Richmond NAACP, met with Robinson, Burney-Devins (the Regional Operations Chief for the Eastern Region of the VDOC), and Holloway at VDOC headquarters. [Id. ¶ 58; Def. Statement of Undisputed Facts ¶ 24]. During the meeting they discussed Pughsley's "transfer, detention, and charge for the petition." [Compl. ¶ 58]. Pughsley adds that Holloway met with him at Sussex II a few days later, on May 25, 2018, and told him that "[t]hings would begin to work out in my favor" if I "never write another petition." [Id. ¶ 61]. Pughsley further avers that he was released back into the general population on June 20, 2018, after 57 days in segregation. [Id. ¶ 66].

Pughsley received a second charge for violating Offense Code 128 on July 7, 2018. [Counts Aff. Enclosure B]. To support the charge, the disciplinary offense report recounts three communications Pughsley made with persons outside of the prison and an interview with prison intelligence officers. [Id.]. The first outside communication is an email summarized as follows:

> On July 9, 2018, the Intel Unit at Sussex I State Prison (S1SP) was made aware that you had attempted to contact Offender H. Shabazz, whom is currently housed at another institution. The communication in question was a JPay email sent on July 6th, 2018 addressed to a Ms. Margaret Beslau. In this email you state that Breslau had already forwarded an email from "H" that morning, to you. In the second portion of the letter, you state "For H." In this section you state the following, "Look, these S1/S2 joints are severely understaffed! Word! Burh, I've been talking to brothers about a Gandhian Attica. Word, 'Blood in the Water' you feel me? Hundreds of people check in at once! We all want to go to the STAR program!" Additionally, you state, "Man, I'm telling you it's time to use the Art of War!"

3

[Id.]. In an interview with prison intelligence officers, Pughsley explained that when he said "Gandhian Attica," he was referring to "Gandhi, the political figure that helped India achieve independence from the United Kingdom," and that when he mentioned "Attica," he was referring to "the prison riots that took place in 1971 in Attica, New York." [Id.]. The second outside communication relied on is an email sent to Ms. Breslau on July 7, 2018, summarized as follows:

> [Y]ou begin the second portion of this email with "For Chanell"; you are referencing Offender Chanell Burnette housed at a female facility in the State of Virginia. In this email you state, "This involves racial re-education. I use the religious institutions that are legitimized by the state to do this." You continue with, "I'm new Afrikan and so I personally like to sue the Rastsfarian (sic) class to teach New Afrika(sic)/Pan Afrikanism(sic)/Afrikan(sic) Internationalism. It's tricky and require [sic] a bit of Artistry but people will begin to respond." Ms. Breslau forwarded this email to Offender Burnette on the same date.

[Id.]. The third outside communication is a telephone exchange on July 2, 2018, in which Pughsley said the following:

> "Do you know how hard I'm fighting not to organize? Seeing you is the only reason I'm not acting crazy." You go on to state, "[N-word] is primed and ready. These young boys are ready to go." You go on to state that a number of Blood and Crip gang members have approached you about making you their "Big Homie" or leader.

[Id.]. The hearing officer, M. Counts, avers by affidavit that during Pughsley's disciplinary hearing on July 19, 2018, he admitted that he authored the emails and made the telephone call. [Id. ¶ 11]. Based on the above communications, Counts concluded that Pughsley had intended "to encourage other to participate in acts of violence against [Department of Corrections]" and found him guilty of violating Offense Code 128. [Id. Enclosure B]. He was penalized with 30 days' disciplinary segregation and a loss of 180 days' good conduct time. [Id.]. Holloway upheld Pughsley's conviction for the Offense Code 128 violation. [Compl. ¶ 97; Def. Statement of Undisputed Facts ¶ 35].

In Pughsley's view, however, the second charge for violating Offense Code 128 was levied because he criticized the conditions at Sussex I during a July 2, 2018, telephone call with his wife, and in a July 6, 2018, email to Margaret Breslau. [Compl. ¶¶ 70–71, 74–75]. In support he adds that on July 9, 2018, he was "abruptly placed in the Restrictive Housing Unit on general detention status pending the outcome of an investigation." [Id. ¶ 73]. The next day, Pughsley adds, prison investigator Lieutenant J. Isaac interviewed him and "expressed concern" about those two communications. [Id. ¶ 74]. Later that day, Pughsley was transferred to Red Onion State Prison. [Id. 76; Def. Statement of Undisputed Facts ¶ 33].

After the second Offense Code 128 conviction, the Institutional Classification Authority recommended that Pughsley be placed in long-term segregation. [Compl. ¶ 87]. By November 29, 2018 (two months after the first Offense Code 128 conviction was overturned) he was released into general population. [Id. ¶ 100]. Two months later Pughsley filed this lawsuit claiming violations of his First Amendment rights based on the confiscation of the petition and his treatment afterwards.

## II. Motions for Summary Judgment

**A. Standard of Review**

Both parties move for summary judgment on Pughsley's First Amendment claims. [Dkt. Nos. 30, 34]. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). In reviewing both motions, "the court views all material evidence to decide whether the undisputed facts could permit a reasonable jury to return a verdict for the plaintiff." Mays v. Sprinkle, 992 F.3d 295,

304 (4th Cir. 2021) (internal emphasis omitted) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).

**B. Analysis**

Before assessing the merits of the parties' motions, the Court first must clarify what claims are actually before the Court. In their respective motions for summary judgment, the parties each outline three claims Pughsley purports to bring, however, there is not a complete meeting of the minds. Pughsley lists his claims as (1) "Denial of Plaintiff's Speech by Defendant Carpenter"; (2) Defendants Ray and Carpenter Retaliated against Plaintiff for Exercising His Speech Liberty"; and (3) "Defendants Robinson, Divins, Holloway, Cabell, and Ray Assumed Supervisory Liability for the Plaintiff's Injuries." [Pl. Mot for Summary J, at p. i]. Defendants, meanwhile, assert that Pughsley's lawsuit claims (1) "Whether on April 24, 2018, Defendant Lt. Carpenter infringed Plaintiff's right to free speech when he confiscated Plaintiff's outgoing mail, opened and refused to return or mail it; (2) Whether Defendant Ray is liable for Carpenter's actions under a theory of supervisory liability; and (3) Whether Defendants Carpenter, Ray, Cabell, Robinson, Burney-Devins, and Holloway retaliated against Plaintiff for seeking 'redress of grievance', such retaliation including wrongful transfers, wrongful classifications, wrongful detentions in segregation and a spurious disciplinary offense." [Def. Summary J. Br., at p. 1].

The Court observes that Pughsley's complaint was not drafted with the skilled expertise of counsel, and the precise contours of the claims brought in it are difficult to decipher. Indeed, defendants' interpretation of the claims is entirely reasonable. Still, because Pughsley explicitly clarifies his three claims in his memorandum of law in support of his motion for summary judgment and does not confront the defendants'-identified claims that do not overlap with his, the Court finds and concludes that the only claims before the Court are those identified by

Pughsley himself. Cf., Estate of Weeks v. Advance Stores Co., 99 F. App'x 470, 474 (4th Cir. 2004) (observing that "a party's failure to raise an issue in a complaint or opposition to summary judgment constitutes a waiver of that issue. Indeed, '[e]ven an issue raised in the complaint but ignored at summary judgment may be deemed waived.'") (quoting Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995)).

Claim (1) identified by each party is the only completely matching claim. Plaintiff's claim (2) matches defendants-identified claim (3) with respect to Ray and Carpenter. And plaintiff's claim (3) with respect to Ray matches defendants-identified claim (2). The Court finds that the remaining portions of the claims identified by defendants are not part of this lawsuit, and, thus, defendants' motion for summary judgment will be denied for those claims.

### i. Plaintiff Claim (1) and Defendant-Identified Claim (1)

In support of claim (1), Pughsley argues that the undisputed facts demonstrate that Lieutenant Carpenter violated his First Amendment rights when the officer confiscated a petition that he intended to mail to citizens to alert them to the conditions at Sussex II. In their brief opposing plaintiff's motion and in their own motion for summary judgment, defendants contend that Pughsley's First Amendment rights were not violated because the petition was confiscated not because of its content but, rather, because prisoners organized to create and distribute the petition, and that kind of collective activity is impermissible and subject to discipline under VDOC policy.

"[T]he First Amendment rights retained by convicted prisoners include the right to communicate with others beyond the prison walls." Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 213 (4th Cir. 2017). But even if a prison regulation impinges on an inmate's First Amendment rights, the regulation is nevertheless valid "if it is reasonably related to legitimate

7

penological interests." See id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). To determine reasonableness, courts examine four factors:

> (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether "alternative means of exercising the right [exist] that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there was an "absence of ready alternatives" to the regulation in question.

Id. (quoting Turner, 482 U.S. at 89–90). It is the prisoner's burden to disprove the validity of the asserted policy. Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

Pughsley has not met his burden. As to the first Turner factor, defendants contend that the VDOC has a legitimate interest in curbing the associational rights of prisoners and that confiscating a prisoner-created and -circulated petition is rationally related to that interest. Defendants rely on Jones v. N.C. Prisoners' Labor Union, Inc, in which the Supreme Court opined that "the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights" with persons outside of the prison and among inmates within the prison. 433 U.S. 119, 125–26 (1977). The Supreme Court's reasoning in Jones compels the conclusion that Sussex I's decision to impede the efforts of prisoners to organize a petition drive was rationally connected to a valid governmental interest.

In support of the second Turner factor, defendants contend that Pughsley himself admits that he had alternative means for exercising his First Amendment right to communicate his prison grievances to outsiders. For instance, Pughsley avers in the verified complaint that after the petition was confiscated, he was interviewed about it by a reporter for the Richmond Times-Dispatch on May 3, 2018, and an article was published days later. [Compl. ¶¶ 49–50]. Pughsley further attests that spoke to his wife on the telephone on July 2, 2018, and during the call he

8

"vented [his] frustration about the conditions at Sussex I state prison." [Compl. ¶ 70]. Thus, the undisputed record supports a finding that Pughsley had alternative means to communicate with outsiders about prison conditions.

Next, defendants argue that the third Turner factor weighs in their favor because, in Jones, the Supreme Court opined that "concerted group activity, or solicitation therefor, would pose additional and unwarranted problems and frictions in the operation of the State's penal institutions." Jones, 433 U.S. at 129. Jones again convinces the Court that accommodating Pughsley's desire to organize prisoner grievances so that a petition could be circulated outside the prison would be unduly burdensome for the prison.

Finally, defendants urge that Pughsley has not proffered any reasonable alternatives to the operating procedure he claims is unconstitutional as applied to him, and under Turner, "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns" 482 U.S. at 90. Indeed, Pughsley has not identified any ready alternatives, and, thus, this last factor also weighs in defendants' favor. In sum, the undisputed facts do not demonstrate that Carpenter, by confiscating the petition, violated Pughsley's First Amendment right to free speech. Therefore, Pughsley's motion for summary judgment on claim (1) will be denied, and defendants' motion for summary judgment on claim (1) will be granted.

### ii. Plaintiff's Claim (2) & Defendants' Claim (3) re: Ray and Carpenter

Pughsley claims that former-warden Ray and Lieutenant Carpenter retaliated against him for engaging in protected First Amendment activity (seeking to send a collective petition of grievances to persons outside the prison) when they transferred him to Sussex I—a higher-security level prison—and placed him in solitary confinement.

To demonstrate unlawful retaliation under the First Amendment, a prisoner-plaintiff must show that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (internal quotation marks, brackets, and citation omitted).

In their motion for summary judgment defendants argue that the undisputed facts do not demonstrate that Ray or Carpenter retaliated against Pughsley for engaging in protected First Amendment activity. They principally argue that Pughsley's claim falters at the first step in the analysis because, as they asserted in his stand-alone First Amendment claim, the undisputed facts do not demonstrate that he engaged in protected First Amendment activity. Defendants are correct. As the Court explained above, under Turner, Pughsley's attempt to mail a petition of grievances gathered from a collective prisoner effort is not protected under the First Amendment. And when "speech is not protected under the legitimate penological interest test [in Turner], it cannot support [a prisoner's] First Amendment retaliation claim." Watkins v. Kasper, 599 F.3d 791, 798 (7th Cir. 2010). For that reason, Pughsley's motion for summary judgment on claim (2) will be denied, and defendants' motion for summary judgment will be granted on claim (3) with respect to Ray and Carpenter.

### iii. Plaintiff's claim (3) re: Ray and Defendants' Claim (2)

In Pughsley's third claim, as relevant here, he contends that former-warden Ray is responsible in his supervisory capacity for the First Amendment violations he suffered. [Pl. Summary J. Br. at pp. 14–15]. In particular, Pughsley argues that Ray knew about his efforts to circulate the petition around the prison and then authorized his transfer to Sussex. I. Defendants

counter that Pughsley's assertion is insufficient to meet the standard for imposing supervisory liability in a § 1983 action.

The Court agrees with defendants. For Pughsley to prevail on summary judgment, the undisputed facts must demonstrate that (1) a supervisory official "knew that [a] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) the supervisory official responded in a manner that "showed deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "there was an affirmative causal link between [the supervisor's] inaction and the constitutional injury." King v. Rubenstein, 825 F.3d 206, 224 (4th Cir. 2016) (internal quotation marks and citation omitted). Pughsley's claim fails at element (1). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994)). Here, Pughsley has not put forth evidence that Ray knew that Carpenter was engaged in widespread unconstitutional conduct. Rather, he points to a single instance—the confiscation of the petition and resulting punishment—which the Court already concluded was not unconstitutional. For this reason Pughsley's motion for summary judgment will be denied on his claim seeking to impose supervisory liability on Ray, and defendants' motion for summary judgment on claim (2) will be granted.

### iv. Plaintiff's Claim (3) re: Robinson, Burney-Devins, Holloway, and Cabell

The remainder of Plaintiff's claim (3) seeks to impose supervisory liability on Robinson, Burney-Devins, Holloway, and Cabell. Pughsley again relies on these defendants' purported knowledge of the petition's confiscation as a basis for imposing supervisory liability. Thus, for

the same reason as with Ray, summary judgment will be denied on the remainder of plaintiff's claim (3) that seeks to impose supervisory liability on Robinson, Burney-Devins, Holloway, and Cabell. See also Evans v. Chalmers, 703 F.3d 636, 654 (4th Cir. 2012) (observing that supervisory liability claim may not succeed without predicate constitutional violation).

### III. Conclusion

For the reasons stated above and in an Order that will accompany this Memorandum Opinion, plaintiff's motion for summary judgment will be denied and defendants' motion for summary judgment will be granted in part, with respect to the claims that are part of this lawsuit, and denied in part, with respect to the claims that plaintiff does not pursue.

Entered this __16th__ day of _____August_____ 2021.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge